**STEINLE, Appellee v CINCINNATI (City), Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 6230.   Decided March 8, 1943.

Hauer & Topmoeller, Cincinnati, and R. T. Dickerson, Cincinnati, for appellee.

John D. Ellis, Cincinnati, Nathan Solinger, Cincinnati, and Robert J. White, Cincinnati, for appellant.

636

[black redaction bar]

## OPINION

By ROSS, P. J.

This is an appeal on questions of law from a judgment of the Common Pleas Court of Hamilton county in favor of the plaintiff.

The case by agreement was tried to the court without a jury.

The action presents an interesting situation in view of the fact that this court has had before it previously other litigation involving the area generally involved in the instant action. This previous litigation is definitely associated with the issues here presented. The bill of exceptions in one of the cases heretofore considered was adopted as the evidence in the instant case.

From the facts thus presented to the trial court it appears that the city of Cincinnati, some time prior to the year 1930, had constructed and thereafter maintained a large sewer in the vicinity of Moerlein and Warner avenues. In that year and again in 1933 the city was notified that the disrepair of such sewer was causing damage to the houses, buildings, and premises of several of the residents in the vicinity of the sewer and the right of way through which it was placed. In 1934 the sewer was repaired by the city. At least one of the property owners involved commenced an action in due time based upon the theory that the negligent maintenance of the sewer had caused damage to his property, and recovered a judgment, which, upon appeal, was sustained.

For some reason, which is not clear, other property owners similarly damaged failed to institute actions until more than four years after their cause of action in tort arose. When some of these, including Joseph Altman, instituted an action predicated upon the theory of a breach of contract incorporated in the deeds of the easement for the right of way for the sewer, it being conceived that such deeds created a contractual obligation on the part of the city to maintain the sewer in a state of repair. This court held that no such contractual obligation existed which would sustain such an action, reversed the trial court and rendered judgment for the city of Cincinnati.

Resourceful counsel then, on behalf of these defeated litigants, and the instant plaintiff had resource to the theory of an action based upon the conception of temporary appropriation by the city of the property affected by the defective sewer. The so-called Altman case, embodying this novel theory will be found reported in 67 Oh. Ap., 409, 36 N. E. (2d), 57, and 20 OO 348.

Following out the third theory for recovery, the present plaintiff seeks to bring the facts of this case, substantially the same in all the cases mentioned, within the purview of **City of Norwood v. Sheen, Exr., 126 Oh. St., 482.** We are advised also that the cases of **Altman, et,** have been refiled upon the additional theory that the previous adjudication of their rights was not governed by a decision upon the merits in that litigation.

Consideration of the instant matter before us therefore is greatly, if not entirely, controlled by a determination of whether or not the plaintiff has brought herself within the purview of the ruling in the case of **City of Norwood v. Sheen, Exr., 126 Oh. St., 482.**

A comparison of the facts upon which the conclusion of the Supreme Court in the Norwood case was based with those in the instant case requires a decision that the Norwood case is not dispositive of the issues here presented. The reasons for this conclusion follow. In the Norwood case, a sewer constructed by the developer of a subdivision was taken over and accepted by a municipality, which, thereupon, according to the Supreme Court, became responsible for its proper maintenance. This sewer at its lower terminus discharged water, filth, and miscellaneous sewage upon the land adjacent to that of the plaintiff and such sewage flowed over such land onto and upon the land of the plaintiff, resulting in an intolerable condition. It may be taken for granted that the allegations of the petition in the Norwood case were sustained by proof, although the case was remanded for a new trial, due to a defective charge of the court. The 9th allegation of the petition in the "Statement of the case" at page 484 in the report is as follows:

"9. That as the result of the unlawful conduct of the defendant herein, the filth, excrement, waste, drainage and unwholesome water polluted and flooded decedent's land and filled the air with noxious odors thereby greatly damaging and rendering decedent's premises useless for any purpose whatsoever."

Now from the allegations of the petition in the instant case it appears that the plaintiff claims the sewer in question became out repair, that water from the sewer affected the supporting ground of the plaintiff's premises causing it to sink, and disturbed the level of the buildings thereon, by "washing out the earth below the surface of the ground of plaintiff's premises and the premises to the west thereof." The plaintiff then alleges the following damages:

"Plaintiff says water aforesaid from said sewer damages her residence by causing the entire structure to settle at least a foot to the north and to the west; that the foundation was caused to crack; that the basement floor was caused to settle and crack and not drain properly; that the plastering was caused to crack and after being repaired to recrack; that the sunken condition of the said

residence puts it upon a constant strain and will cause it to crack and its condition to continue to get worse.

"Plaintiff says that the water from said sewer damaged her garage by causing it to sink, lean and break to pieces; that the floor of same was caused to sink and crack to pieces; that the sunken condition of said garage to the north and west will in time cause it to collapse."

While it is true that in the Norwood case it is held the petition need not specifically and categorically define the action as one for temporary appropriation of private property for public use it is also held that facts must be alleged showing the existence of such a cause of action. Giving the petition the full value of every reasonable intendment it is manifest that not only does it not state such a cause of action as was stated in the Norwood case, but that it goes no further than to state a cause of action for damages based upon negligence of the city in maintaining a sewer out of repair.

In the instant case the damages have been stipulated pending ultimate decision in favor of plaintiff. Notwithstanding this, it is interesting to compare the allegations of damages in the instant petition with the rule laid down in paragraph 4 of the syllabus in the Norwood case.

The plaintiff in her petition in this case states:

"Plaintiff says that by reason of the damages aforesaid, caused by water from said sewer the reasonable market value of her property from the time said damage started to the present time has depreciated in the amount of five thousand, five hundred ($5,500.00) dollars, as a result of said damages.

Paragraph 4 of the syllabus in the Norwood case is:

"Where injury to or appropriation of real property arising out of the deposit of sewage from a sewer controlled and maintained by a city is temporary only, and such condition has been abated by the city prior to the institution of an action for damages, the measure of damages, if the property be rented or held for rent, is the diminution in its rental value during the continuance of the injury, but, if it be occupied by the owner, it is the diminution in the value of the use of the property during such period."

It must be apparent that the petition certainly was not drafted upon the theory of the Norwood case.

Reference to the evidence in the instant case supplementing the statement of facts already made develops these additional facts upon which the plaintiff relies to sustain her claim of appropriation. When the city became engaged in the repair of the sewer in 1934

it excavated to some considerable depth on property adjoining that of the plaintiff.  As the excavation reached the level of the  sewer bed, for some ten feet above such level, soppy watery soil, impregnated with sewage, was brought to the surface and put in a wooden bin out upon the street.  The soil was so near fluid it had to be so confined.

There is also some expert testimony that in the opinion of the witness a subterranean pond was found in the vicinity of the sewer. The opinion as to the depth and extent of such pond if it existed are speculative in the extreme.  There is evidence that the foundation of plaintiff's house constructed of reinforced concrete sagged in the rear in the direction of the sewer.  Shortly after the sewer was repaired the buildings on plaintiff's property ceased to sink.

There is no substantial evidence in the record that sewage from the defective sewer ever occupied the premises of the plaintiff. There is no evidence that at any time there was any direct encroachment upon the land or in the land of plaintiff which subjected it to a public use and which excluded or restricted the dominion and control of the plaintiff over it and there is, therefore, no evidence that the plaintiff's property or any part thereof was ever taken temporarily or otherwise by the city of Cincinnati for public use.

The law laid down in the Norwood case is the law of this state, but that law as found in the syllabus is framed in the facts of the case, and those facts have no similarity to facts upon which the right of action in the instant case is predicated.

The rule announced in the Norwood case is largely based upon the case of **Lake Erie & Western Railroad Co. v. Commissioners of Hancock County et, 63 Oh. St., 23,** the 3rd paragraph of the syllabus of which it as follows:

"Any direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the owner over it, is a taking of his property, for which he is guaranteed a right of compensation by Section 19, of the Bill of Rights."

The right of action for damages for injury to property proximately caused by the negligent maintenance of a sewer is not exclusive it is true of a right of action for temporary or permanent appropriation of property which may occur because of such negligence, but there is no reason or requirement of justice requiring that such rules noted herein shall be extended beyond the obvious limitations of their application.

It would seem clear now after reviewing the entire history of this litgation that the plaintiff is now seeking to avoid the effect of the statute of limitations applicable to the tort claim which she possessed by a resort to her present theory, which may only be

.sustained by distorting the clear inference of the allegations of her petition and the evidence incorporated in the record.

For the reasons given, the judgment of the Court of Common Pleas is reversed and judgment here entered for the defendant.

MATTHEWS, J., concurs.

## MEMORANDUM ON MOTION TO DISMISS APPEAL.

No. 6230. Decided February 23, 1943.

By ROSS, P. J.

A motion to dismiss this appeal on questions of law has been filed by the plaintiff. It is asserted that this action should be taken for the reason that "no proper motion for a new trial was filed within three days after the decision and finding of the Court of Common Pleas of August 27, 1942, trial by jury having been waived by the parties and the cause submitted to the court." .   .

The plaintiff-appellee further moves the court to strike the bill of exceptions from the record for the same reason.

The motions will be considered in inverse order. The appellant has admitted in open court that it has no assignment of errors which can be presented in the absence of a bill of exceptions. Unless such were the case, even though the bill of exceptions were stricken from the files, this action would not necessarily require a dismissal of the appeal.

As the matter stands, however, if the contention of plaintiff is correct the entire matter is disposed of. If the bill of exceptions is properly filed, then the ground for dismissal fails, since it appears that notice of appeal was duly filed within 20 days from the entry of judgment.

From the record, it appears that the case is one at law, and was one triable to a jury and was submitted to the court without a jury.

Among the original papers is a written memorandum opinion bearing a file date of October 15, 1942. The opinion bears a date, August 27, 1942. This latter date, from its typewritten position at the end of the opinion was evidently placed there by order of the judge. It is admitted by counsel that the opinion was never ordered filed by the judge. It was filed on October 15, 1942 by counsel for plaintiff without the knowledge or consent of the court.

The transcript of the docket and journal entries shows the following:

"1/21/42   Min. 304   Cause concluded first day, Heard and submitted.

This day came the parties herein by their Attorneys and this cause came on to be heard on the pleadings and the evidence.

The court having heard the testimony adduced and the argument of counsel, the cause was submitted to the court for decision.

1/26/42   Min 387   Leave given to file second amended answer.

1/26/42   Second Amended Answer filed by leave.

10/15/42   Memorandum Opinion filed.

10/29/42   Min. 302.   Finding of the Court in favor of the Plaintiff in the sum of $3,000.00 and costs.   *   *   *

10/30/42   Motion of defendant for judgment notwithstanding the finding of the Court filed.

10/30/42   Motion of defendant for new trial filed.

11/4/42   Min 353.   Entry overruling motion for new trial, overruling motion for judgment notwithstanding the finding of the Court and entering final judgment in favor of the plaintiff.   *   *   *

11/6/42   Notice of Appeal on Questions of Law filed."

It is thus apparent that the motion for new trial was filed within three days from the entry of finding by the Court, but more than three days from the date of the opinion and more than three days from the filing of the opinion by counsel for plaintiff.

An examination of the opinion shows that the judge made the following statements therein:

"Parties having agreed upon the amount of damage sustained by plaintiff in this case, in the event the Court found in favor of plaintiff, judgment will be granted plaintiff for the amount agreed upon by the parties.

"So far as the Court is able to recall, arguments of counsel in this case did not cover the third defense which raises the issue of the right of the plaintiff to bring the action.

"Plaintiff introduced in evidence as Exhibit "A", a duly executed assignment to plaintiff from Theresa Anna McLaughlin of her right, title and interest to any claims for damage which she may have against the City by reason of her ownership of the premises during the years when the damage was suffered.  This question the Court will leave open for further presentation and argument."

It is the contention of the plaintiff that this language used by the Court constitutes a finding by the court and that therefore such act of the court is equivalent to the verdict of a jury, and the instant case is brought within the purview of **In Re Estate of Lowry, 140 Oh. St., 223.**  In the first place, certainly, no verdict couched in such provisional terms would be considered a verdict, justifying the discharge of the jury.  The court specifically retained jurisdiction over the case for further action.  At page 224 of the opinion in the **Lowry case,** it is stated:

"The court rendered a written decision July 2, 1940, in favor of the complainant, and on the same day the defendant filed a motion

for a new trial. Additional evidence was submitted August 8, 1940, to establish the value of the property in dispute, and on August 30, 1940, the court, in a written decision, found the value of the property. A motion for a new trial was filed the following day."

It would appear that the opinion in the instant case corresponded to the action of the court in the **Lowry case** on July 2, 1940. No "written decision" was made in the instant case until October 29, 1942, when the court made a formal finding duly journalized, a motion for new trial being duly filed within three days thereafter. This court is bound by the law pronounced by the Supreme Court of Ohio, and if the **Lowry case** covered the facts herein involved, this court no matter what its own conclusion might be, would follow the law so announced. The confusion incident to departing from the rule announced in **Industrial Commission of Ohio v. Musselli, 102 Oh. St., 10,** is illustrated in this case.

The rule that the court speaks only through its journal was simple and sure. Questions undoubtedly will occur arising out of whether counsel are made aware of the "written opinion" of the court. The verdict of a jury has a prominence and carries with it a notice which may well not apply to that of a written opinion, which may be promulgated in any one of many ways.

It is with regret that the possible consequences of the rule laid down in the **Lowry case** are contemplated. That regret, however, is accompanied by full respect for the authority of the Supreme Court in the matter. It is a matter of concern also as to just what is meant by rendering a decision or announcing a decision and how a record is to be made of such acts.

It will be noticed that in the cases from other states noted in the Lowry opinion—the written opinion was filed in the action.

It would seem that it would not be improper to require that the court should make a complete and final finding and this should be filed with the other papers in the action before it should become binding upon the parties. It does not seem to do violence to the second part of the syllabus in the **Lowry case** to construe the words used therein as meaning that a Court has not "rendered a decision" until it is formally filed in the action.

As to the instant case it appears a motion for a new trial was filed within three days after the court had rendered a decision or made a finding disposing of all matters and issues submitted to it for decision. The motion to strike the bill of exceptions is overruled and, consequently, the motion to dismiss the appeal will be overruled.

MATTHEWS, J., concurs.